**ROYAL MAIL STEAM PACKET CO. v. ELTING, Collector of Customs.**

No. 484.

Circuit Court of Appeals, Second Circuit.
July 25, 1933.

George Z. Medalie, U. S. Atty., of New York City (George B. Schoonmaker, Asst. U. S. Atty., of New York City, of counsel), for appellant.

John M. Lyons, of New York City (Mark E. Cymrot, of New York City, of counsel), for appellee.

Before MANTON, L. HAND, and AUGUSTUS N. HAND, Circuit Judges.

L. HAND, Circuit Judge.

This is an action to recover fines collected by the collector of the port of New York from the plaintiff, a steamship carrier, for the importation of aliens who were excluded upon their arrival. These were in two groups, twenty-five in all, one group of sixteen, arriving on July 2, 1923, and the other of nine, on August fifth of the same year, both on the same ship. They were excluded because the quota was full in each case, and the plaintiff seeks to recover, because the action of the Secretary of Labor in failing to admit them as quota exempt was either unlawful, or that the exercise of his discretion in refusing to excuse the carrier was arbitrary. The Secretary's reason for imposing the fines was that it was well known to all carriers that the monthly quotas were exhausted on the first day of each month, and that by arriving on the second, and a fortiori on the fifth, the plaintiff necessarily invited exclusion, and could not excuse itself for having accepted the aliens as passengers.

■■ Those on the first voyage were allocated, eight to Turkey, one to Albania, three to Africa, four to Syria. The July quota for these countries was: Turkey, 531; Albania, 58; Africa, 21; Syria, 177. The steamer left Cherbourg on June twenty-third, and therefore had eight days to reach New York by the first. The time of arrival, by which precedence in quota allotment was measured, was the day when the ship passed quarantine. She arrived there on July second, and was there detained for two days; but it was already too late on the second for the aliens to be admitted within the July quotas, the race for entrance being acute at the time. The case was tried to a jury of one and the evidence consisted only of the record in each case before the Board of Special Inquiry, and the correspondence that followed between the plaintiff and the Department. In two cases it appeared without contradiction that the ship was obliged unavoidably to reduce her speed, and for this reason arrived a day behind her schedule. We are to assume from this, at least as to these two aliens, that the plaintiff had reasonable ground to believe, when the ship cleared from Cherbourg, that she would arrive on the first. If so, she would be in line for preference in the quota, and it was impossible to know just what her position of precedence would be. Indeed, we do not understand it to be disputed that the plaintiff would have been excused, had the ship arrived on the first. Moreover, she could not have safely arrived in June, else

her passengers would have gone upon that month's quota, which would certainly be exhausted. It seems to us that as she left in season, she should not have been charged with the unavoidable delay en route. Reasonable diligence did not demand forecasting such an accident, and reasonable diligence alone was required. Section 6, Act of May 19, 1921 (42 Stat. 5), as amended by the Act of May 11, 1922, § 3 (42 Stat. 540). It is true that the excuse was made in only two of the records, as we have said; but the point is not raised that the claim made in the plaintiff's protest should not apply to all the aliens on that ship. The records were introduced on the trial without reservation, and we are disposed to say that the facts relevant to any were admissible for all, without holding that, if properly circumscribed, the evidence should not have been limited to each record separately.

■ Therefore, the judgment was right as to all the aliens who arrived on July second, with the exception of three included in the ninth cause of action. As to the fines for these, the plaintiff made no protest, and the payments must be held to have been voluntary. Section 6 provided that the Secretary should impose the fine in the first instance, if merely satisfied that an inadmissible alien had been brought in, and that it should not be refunded, unless it appeared that the carrier could not have ascertained his inadmissibility. This implied that some action should be taken to revise the imposition, and the most reasonable interpretation is that the carrier aggrieved should make known his complaint and claim redress. The first opportunity for correction was the Secretary's; invocation of his powers was a condition precedent upon any action for recovery. The judgment is affirmed as to all the aliens, except the three in the ninth cause of action.

■ The case however stands otherwise as to the nine arriving on August fifth. They came on the same ship and were allocable, seven to Turkey, and two to Africa; the August quotas were the same as for July. The carrier, if not before advised of the conditions obtaining as to the quotas during that summer, certainly became aware of them, or was charged with notice of them, when the ship set sail from Cherbourg on July twenty-seventh. Her past performance showed that by no possibility could she reach New York till August fourth and fifth. Thus upon embarkation the plaintiff knew that those who were not quota exempt, would almost certainly be excluded. It took its chances, and did not use "reasonable diligence" to ascertain their admissibility. Certainly it would be absurd to hold that it was arbitrary for the Secretary so to find. Therefore, the question arises whether the plaintiff had good cause to suppose that the nine were quota exempt; it asserts that it had such cause only as to two. One was a boy of nineteen, who tried to get in as a bona fide student. There is no such exemption in the act of 1921, and that contained in section 3 of the Immigration Act of 1917 (8 USCA § 136) did not affect quota exclusion. Assuming however that if in fact such a student, he would have been quota exempt, the evidence was enough to justify his exclusion; and it does not appear that the plaintiff could not have learned all the facts before he took ship. The boy had been in a school in Turkey whence he came, but it did not appear how long before he embarked he had left it, and there was nothing further except that he had studied at night and worked in the day, and that he hoped to study law, if he got in. His uncle, who made an affidavit to secure his entry, did not suggest that he was a student. He had not established his status.

■ The other alien was also a Turk, a married woman of eighteen, seeking admission as a "professional nurse." From the age of about nine years, for about seven years she had been in an Armenian "nurse's school," where children were taught. After that she served two years with the Red Cross at Constantinople. What her training had been and for what she was fitted, do not further appear. We have discussed the standard for "professional nurses," required by the statute, in our decision in Transatlantica Italiana v. Elting, 66 F.(2d) 515, handed down herewith, and it is apparent that she did not conform to it.

Judgment affirmed as to causes of action numbers 1, 2, 3, 4, 5, 6 and 13; reversed as to 7, 8, 9, 10, 11 and 12.